## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| D.D., by and through his next friend | ) | |
| CATHY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  2:09cv691-WHA |
| | ) | |
| CHILTON COUNTY BOARD OF | ) | (WO) |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by the Defendants Chilton County Board of Education, Keith Moore, Benita Cahalane, and Heather Alford (Doc. #27).

The Plaintiff, D.D., by and through his next friend Cathy Davis,[1] brings claims against the Defendants pursuant to 42 U.S.C. § 1983, for violation of his procedural due process and substantive due process right to liberty under the Fourteenth Amendment to the Constitution of the United States (Count I), his procedural due process and substantive due process right to bodily integrity under the Fourteenth Amendment (Count II), a claim for denial of his right to a free and appropriate education under the Individuals with Disabilities in Education Act ("IDEA") (Count III), and state law claims for assault and battery (Count IV) and outrageous

---

[1]  The court notes that D.D.'s next friend is referred to as "Cathi" Davis in the briefs and supporting evidence.  The name is spelled "Cathy" in the caption and body of the Complaint, however, and the court adopts the spelling used in the Complaint.

conduct (Count V).

The Defendants filed a Motion to Dismiss which the court granted in part and denied in part, allowing the case to proceed on the Fourteenth Amendment claims in Counts I and II against all Defendants, the IDEA claim in Count III against the Chilton County Board of Education, and the assault and battery claim in Count IV and the outrageous conduct claim in Count V against the individual Defendants.  *See* Doc. #19.

The Defendants have moved for summary judgment as to all the claims remaining after the court's order on the motion to dismiss, or alternatively, for summary judgment on the federal claims and dismissal of the state law claims for lack of jurisdiction.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED as to the federal claims, and the state law claims dismissed without prejudice.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute

of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III. <u>FACTS</u>

The facts taken in a light most favorable to, and with all reasonable inferences drawn in favor of, the non-movant are as follows:

During the 2008-09 school year, D.D. was a four-year-old enrolled at Clanton Elementary School, operated by Chilton County Board of Education.  D.D. was receiving educational services pursuant to an Individualized Education Program ("IEP") based on his diagnoses of Pervasive Development Disorder, Attention Deficit/Hyperactivity Disorder, Impulse Control Disorder, and Mood Disorder.  Benita Cahalane Aff. at page 2.  Defendant

Heather Alford ("Alford"), D.D.'s teacher during the relevant time period, states in an affidavit that D.D. hit and kicked her, her teacher's aide, and his classmates during the fall of 2008. Alford Aff. at page 2.  Alford states that she tried to help D.D. to end these behaviors by offering him choices and positive reinforcement.  *Id.*  Alford states that D.D. needed space to calm down and that he liked to sit in the toddler chair in her classroom when he was upset.  *Id.*  The chair at issue is a toddler chair made by the Rifton company which Alford had in her classroom.  Benita Cahalane Dep. at page 17: 10-21.  The chair is referred to as both the toddler chair and the Rifton chair in this case.  It has various uses, which are generally therapeutic.  *Id.* at page 27:10-3.

On November 5, 2008, D.D. was being very disruptive in class, and kicked several students and teachers, including Alford.  Alford Dep. at pages 87-88 .  Alford removed D.D.'s shoes because he had hurt her shins by kicking her.  Alford Aff. at page 3.   Alford knew that Davis would be checking D.D. out of school at 1:40 p.m. that day.  Alford Dep. at page 87: 8-9. At the students' nap time at 1:30, Alford asked D.D. to take a nap and he kicked and hit her and the teacher's aid.  *Id.* at page 110: 12-112: 6.  Alford gave D.D. the option of reading a book, but he refused.  *Id.* at page 121: 5-7.  Alford then either offered him the option of sitting in a chair, or asked him to sit in the toddler/Rifton chair, and D.D. sat in the chair.  Alford did not force him to sit in the Rifton chair.  Alford's testimony is that D.D. enjoyed sitting in the Rifton chair and had chosen to sit in it on previous occasions.  *Id.* at page 124: 19.   Upon sitting in the Rifton chair on November 5, D.D. did calm down, but still called Alford, her teacher's aid, and some children stupid and told them to shut up. *Id.* at page 252: 2-7.   Even though he would soon be leaving, Alford wanted to calm him because he could still have hit more children before he left. *Id.* at page 186: 10-3.   Alford attached the Rifton chair's Velcro lap belt around D.D. so that he

4

would not fall, and moved him into the hallway.[2]  *Id.* at page 99: 13, 250:13-6.  She placed him facing the wall and sat beside him at arm's length from him in the hall to wait for his mother. *Id.* at page 233: 13-17.  She faced him toward the wall to help calm him and to limit distractions that would upset him.  *Id.* at page 259: 3-7.  Alford stepped into the classroom to get D.D.'s book bag.  *Id.* at page 252: 22- 253: 5.  D.D. was in the chair for a total time of less than ten minutes. Alford Aff. at page 3.  When Davis arrived, Alford undid the strap and returned D.D.'s shoes, and D.D. began trying to hit and kick Alford.  Alford Dep. at page 158: 17-23.[3]

        Cathy Davis ("Davis"), D.D.'s mother, states in her affidavit that when she arrived at Alford's classroom on November 5, she observed D.D. strapped at the waist and feet to a chair in the hallway with the classroom door closed, crying and alone.   The Plaintiff's version, therefore, which the court accepts for the purposes of this motion, is that the Rifton chair had both a waist and foot straps, and that Alford used both the waist and foot restraints on the day in question. Davis states that when she reached D.D., Alford came out of the classroom and began to unstrap D.D. from the chair.  Davis states that the chair was not on rollers or a platform.

        Davis had requested a behavioral plan as part of his IEP, but no plan was developed or implemented until after the chair incident at issue.  Davis states that she was not notified on November 5, 2008 that D.D. was being strapped into a chair, nor had she been told that the use

---

        [2]  Alford states that she rolled the chair into the hall on a low dolly.  Davis disputes that the chair was on a dolly or rollers when she came to pick D.D. up.  Either way, Davis does not present evidence to dispute Alford's version of events that she moved the chair containing D.D. from the classroom to the hall.

        [3] In her deposition, Davis states that she never saw D.D. kick or hit Alford, but does not testify about whether he tried to do so when he was released from the restraints on the chair on November 5.  Davis Dep. at page 101: 13-22.

of a Rifton Chair had been authorized as a consequence for inappropriate behavior.  After seeing

D.D. in the chair, Davis contacted Defendant Keith Moore, the Superintendent of the Chilton

County Board of Education, and said that she wanted D.D. removed from Clanton Elementary

School.  Moore and  Defendant Benita Cahalane, the Chilton County Special Education

Coordinator, worked on the transfer, but then Davis requested that D.D. not be transferred to a

different school, but only to a different teacher.  D.D. was assigned to a different pre-school

teacher.

Alford was never disciplined a result of the incident in question and a determination

was made that she followed all policies, procedures, and practices of the Chilton County Board

of Education.

Davis filed a due process complaint with the Alabama Department of Education.  A

resolution meeting was held to discuss her complaint.[4]  Davis and D.D. later moved out of

state.

## IV. DISCUSSION

The Defendants have moved for summary judgment on all of the Plaintiff's claims

remaining after the court's ruling on the Motion to Dismiss.  The court addresses first the federal

claims, and then the state law claims.

### Federal Claims

A.  Fourteenth Amendment

1.  Substantive Due Process

---

[4]  No challenge has been brought as to anything which occurred as a result of the
administrative proceedings.

The substantive due process doctrine is designed to "protect[ ] those rights that are fundamental-rights that are implicit in the concept of ordered liberty." *Skinner v. City of Miami*, 62 F.3d 344, 347 (11th Cir. 1995).   "Courts have been notably reluctant to expand substantive due process doctrine to encompass state torts." *Dacosta v. Nwachukwa,* 304 F.3d 1045, 1048 (11th Cir. 2002).  Officials acting under the color of state law violate substantive due process when their conduct is arbitrary, or conscience shocking, in a constitutional sense.  *Peterson v. Baker*, 504 F.3d 1331, 1337 (11th Cir. 2007).   To rise to the conscience-shocking level, conduct must be "intended to injure in some way unjustifiable by any government interest [.]" *Davis v. Carter,* 555 F.3d 979, 982 (11th Cir. 2009) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

The Defendants contend that the actions of Alford at issue in this case do not rise to a constitutional level.   The Defendants argue that D.D. sitting in a toddler chair with a seat belt on and, assuming the Plaintiff's version of events, foot restraints, did not shock the conscience.  The Defendants argue that it was objectively reasonably to restrain D.D. for his own safety, and to secure his feet while Alford was sitting in the hall with him because D.D. had kicked her previously during the day.  The Defendants further point out that no physical injury was sustained by D.D .

The Plaintiff responds that the Defendants have taken the position that he was not restrained for punishment purposes, and that the foot restraints were not necessary for safety. The Plaintiff argues, therefore, that his being restrained at the waist and feet, without shoes, and unsupervised in the hallway is arbitrary and conscience-shocking.[5]   The Plaintiff relies at least

---

[5] At some points in the Plaintiff's brief, the argument is made that the Rifton chair was used on various occasions.  There is no evidence of use of restraints in the chair other than the

in part on *Jefferson v. Ysleta Independent School District*, 817 F.2d 303 (5th Cir. 1987).  In

*Jefferson*, the Fifth Circuit concluded that tying a second-grade student to a chair for an entire

school day and for a substantial portion of a second day with no suggested justification other

than an instructional technique was constitutionally impermissible.

Clearly, this case is distinguishable from *Jefferson*.  The length of time during which

D.D. was restrained, approximately ten minutes, was much shorter than nearly two school days,

and the restraint was for purposes other than an instructional technique.

The analysis by the Eleventh Circuit in *Peterson* is instructive in this case.  In *Peterson*,

an eighth-grade student attempted to leave the classroom contrary to the teacher's instructions

and the teacher barred the door with her arm.   The student then made physical contact with the

teacher in some manner, and the teacher choked the student, leaving some marks but no lasting

injury.  The student brought a claim for substantive due process denial of bodily integrity.  On

appeal, the student argued that there was a genuine issue of fact as to whether the teacher acted

in self-defense or administered corporal punishment.  The Eleventh Circuit reasoned that as

either self-defense or corporal punishment, the teacher's conduct was constitutionally

permissible.  *Peterson*, 504 F.3d at 1336.  The court reasoned that justification for some corporal

punishment was considerable, and the bodily injury was not serious.  *Id.*  The court also

explained that there is both an objective and subjective component to substantive due process

analysis, but that if the force is not excessive as a matter of law, and was a reasonable response

to the student's misconduct, then the subjective intent of the school official is unimportant.  *Id.* at

1337 n.5.   The court explained that to reach the constitutional standard, a plaintiff must show

date at issue, however.

8

that the school official intentionally used an amount of force that was obviously excessive and that the force presented a reasonably foreseeable risk of serious bodily injury. *Id.* at 1337. Excessiveness of force is analyzed considering the totality of the circumstances, including the need for the force, the relationship between the need and the amount administered, and the extent of injury inflicted. *See id.* Under an objective standard, under a totality of the circumstances, the court concluded that the use of force by the teacher in *Peterson* in choking the student who had used force against her was not obviously excessive. *Id.*

In this case, Alford has explained that she was attempting to calm D.D. so that he would not continue his disruptive behavior, including kicking, and that she used restraints for safety. The Second Circuit, expounding on Supreme Court precedent, has identified as legitimate government ends in the school context student discipline, classroom control, or self-defense. *See Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246 (2d Cir. 2001); *see also Peterson*, 504 F.3d at 1336 (stating, "To us, it is unimportant whether the teacher either acted in self-defense or imposed corporal punishment . . .). Therefore, this court will apply the factors applicable in the corporal punishment context to this case, where the state interest was in classroom control and safety. *See e.g., G.C. v. School Bd. of Seminole Co.*, 639 F. Supp. 2d 1295, 1305 & n. 15 (M.D. Fla. 2009) (applying corporal punishment factors even though restraints were arguably for safety).

The facts in this case fall well short of facts found to constitute a substantive due process violation of excessive corporal punishment. For instance, in *Kirkland ex rel. Jones v. Green Co. Bd.*, 347 F.3d 903, 904 (11th Cir. 2003), the court found a constitutional violation where a principal struck a student in the head, ribs, and back with a metal cane, leaving a knot on his

head, and causing migraines.  In *Neal v. Fulton Co. Bd. of Educ.*, 229 F.3d 1069, 1075 (11th Cir.

2000), a high school coach's conduct rose to the level of a constitutional violation, where the

coach intentionally struck a student with a metal weight lock, knocking the student's eye out of

its socket, as a form of punishment for his involvement in a fight with another student.  *See also*

*H.H. v. Moffett*, 335 Fed. Appx. 306, 314 (4th Cir. 2009) (holding that restraint of a disabled

child for hours while the teacher verbally abused her was a use of restraint so inspired by malice

that it amounts to a brutal and inhumane abuse of official power).

Applying an objective standard to the facts that D.D. was a young child who was

receiving special education services, was restrained at both the waist and the feet, was shoeless,

and was left alone in the hallway while restrained for a few minutes, and considering the totality

of the circumstances including that D.D. had previously been disruptive, had engaged in kicking

behaviors, that D.D. had accepted the option to sit in the Rifton chair, and that he did not sustain

any physical injury as a result of the restraint, the court concludes that Alford's actions were not

excessive as a matter of law and were a reasonable response to D.D.'s behavior.[6]  Therefore, the

court concludes that the facts, viewed in a light most favorable to the non-movant, did not shock

the conscience in a constitutional sense.  *See e.g., G.C. v.  School Bd. of Seminole Co.*, 639 F.

Supp. 2d at1305 (concluding that teacher's limited use of physical restraint of an autistic student

for safety purposes which did not result in injury did not shock the conscience).  Summary

judgment is, therefore, due to be GRANTED as to the substantive due process claims in Counts I

---

[6] Even if the corporal punishment factors are not applicable in the context of the
legitimate state interests of classroom control and self-defense, Alford's actions fall within the
range of teacher conduct that is not conscience-shocking.  *See Peterson*, 504 F.3d at 1336 n.4
(citing *Lillard v. Shelby Co. Bd. of Educ.*, 76 F.3d 716, 725-26 (6th Cir. 1996) for the proposition
that a single slap without justification does not shock the conscience).

and II of the Complaint against Alford.[7]

The Plaintiff's substantive due process claims against Cahalane, Moore, and the Board all arise from Alford's actions, not from their own independent actions.  No substantive due process violation having been established on the part of Alford, there can be no liability on the part of the other individual Defendants or the Board for a violation of substantive due process, regardless of what policy or custom may have been in place.  *See Collins v. City of Harker Heights,* 503 U.S. 115, 123-24 (1992).   Summary judgment is, therefore, due to be GRANTED as to all Defendants on the substantive due process claims for deprivation of liberty and bodily integrity in Counts I and II of the Complaint.

## 2.   Procedural due process

The Plaintiff also claims in Counts I and II of the Complaint that D.D. has a procedural due process right which was violated by the Defendants' actions.  It is, however, unclear from the Complaint what the Plaintiff's theory is in support of these claims.   In response to the Motion for Summary Judgment, the Plaintiff states that he had a right to notice and a hearing before his liberty and bodily integrity were deprived, pointing to the Clanton Elementary School Parent/Student Handbook which states that parents will be called to the school if a serious behavior issue occurs, and that there is a progression of disciplinary consequences for inappropriate behavior.   The Plaintiff also argues that there is no form for notifying parents that a Rifton chair would be used as a disciplinary consequence.  The court has been provided

---

[7] Even if there were a question of fact which precluded summary judgment on the issue of the constitutional violation alleged, Alford and the individual Defendants would be entitled to qualified immunity, having not been given fair warning that use of a Rifton chair with restraints for a brief period of time which did not result in any injury is a violation of substantive due process.  *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

evidence that subsequent to the incident in question, a letter was sent to parents regarding the use of the Rifton chair.   The Plaintiff, therefore, appears to be arguing both that Board policy was not followed, and that there was no Board policy providing for notice and a hearing.

As to the former contention, "the violation of a state statute mandating procedure is not the equivalent of a federal Constitutional violation." *First Assembly of God of Naples, Florida, Inc. v. Collier County, Fla*. 20 F.3d 419, 422 (11th Cir. 1994).  Furthermore, when a deprivation occurs because of unauthorized acts of state employees, and not because of an official state procedure, "it is nearly impossible for the state to foresee such an event in order to provide a meaningful pre-deprivation hearing." *Hellenic Amer. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir.1996).   Even accepting that there is at least a question of fact in this case as to whether Alford acted outside of established law, the Plaintiff would need to demonstrate that any post-deprivation remedy for Alford's actions was inadequate, which the Plaintiff has not done.[8]  *See McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (stating, "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.").  Therefore, summary judgment is due to be GRANTED on the theory that D.D. was not provided procedural process because Alford failed to follow Board policy.

As to the other procedural due process theory arguably advanced by the Plaintiff, another judge of this court has previously determined that no procedural due process right attaches to the use of corporal punishment in Alabama schools, relying on *Ingraham v. Wright*, 430 U.S. 651 (1977).  *See Hale v. Pringle*, 562 F. Supp. 598 (M.D. Ala. 1983) (Thompson, J.).   In *Ingraham*,

---

[8] The Plaintiff apparently does not dispute, having failed to respond to the Defendants' contention, that administrative IDEA remedies were not exhausted in this case.

the Court concluded that although corporal punishment in public schools implicates a liberty

interest, traditional common-law remedies protect against unjustified corporal punishment, so

that the Due Process Clause does not require a notice or hearing in Florida public schools. *Id.* at

682.   In *Hale*, the court applied *Ingraham* and concluded that the Due Process Clause does not

require notice or a hearing prior to the imposition of corporal punishment in Alabama public

schools.  *Hale*, 562 F. Supp. at 601; *see also Gaither v. Barron*, 924 F. Supp. 134, 136 n.3 (M.D.

Ala. 1996).

        This court recognizes that the Defendants in this case do not argue that they restrained

D.D. as corporal punishment.  The cases discussed above, however, persuasively establish that

although a right to bodily integrity exists for students, competing state interests, and state

policies against abusive corporal punishment, mean that procedural due process rights do not

attach in every instance, even when a child is restrained, and pain is inflicted for punishment. *See*

*Ingraham*, 430 U.S. at 674.

        Consistent with this analysis, the Fifth Circuit has explained that procedural due process

rights are "circumscribed by the need for effective and often immediate action by school officials

to maintain order and discipline," so that *de minimus* deprivations of liberty do not implicate

procedural due process requirements.   *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1080-

81 (5th Cir. 1995) (citing *Dunn v. Tyler Indep. Sch. Dist.*, 460 F.2d 137, 144 (5th Cir.1972)).[9]

In *Hassan*, a sixth grade student touring a juvenile detention center as part of a school field trip

was detained in the center's holding room for 50 minutes for being disruptive.   The court

_____

        [9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the
Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed
down prior to October 1, 1981.

concluded that this *de minimus* deprivation of liberty did not implicate procedural due process guarantees. *Id.* at 1081. This court is persuaded to apply this reasoning by the Fifth Circuit, which is consistent with Eleventh Circuit, and Supreme Court, precedent.

Alford's actions to restrain D.D. are analogous to that in *Hassan*, as actions taken to maintain order. Alford's actions in restraining D.D. to a chair while she moved him to the hallway, and while waiting for his mother whose arrival she anticipated within ten minutes, even when viewed in a light most favorable to the non-movant, are not a sufficient deprivation of liberty or bodily integrity so as to require advance notice and a hearing.

The procedural due process claims alleged against all the Defendants arise from the actions of Alford. Therefore, the Plaintiff having failed to demonstrate a deprivation of federal procedural due process by Alford, summary judgment is due to be GRANTED as to all Defendants on the procedural due process claims in Counts I and II of the Complaint.[10]

## B. IDEA

The Defendants have moved for summary judgment on the Plaintiff's IDEA claim on several bases, including that the Plaintiff failed to exhaust administrative remedies, and that the Plaintiff has now moved outside of Chilton County, so that no new IEP is necessary. The Plaintiff's brief in response to the Motion for Summary Judgment does not address these grounds for summary judgment, nor refer to the IDEA claim. Accordingly, summary judgment is due to be GRANTED as to the IDEA claim in Count III of the Complaint. *See Johnson v. Bd. of Regents*, 263 F.3d 1234, 1264 (11th Cir. 2001) (stating, a party "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to

_____

[10] Alternatively, if there was a procedural due process violation, this right was not clearly established and the individual Defendants would be entitled to qualified immunity.

14

develop for the district court at the time of the summary judgment motions.").

**State Law Claims**

The Plaintiff brings state law claims for outrageous conduct and assault and battery. Although the Defendants have moved for summary judgment on these claims, they have alternatively asked for this court to dismiss the state law claims for lack of jurisdiction. This court has supplemental jurisdiction over the state law claims, so the claims are not due to be dismissed for lack of jurisdiction. *See* 28 U.S.C. § 1367. Having concluded that summary judgment is due to be GRANTED as to all federal claims over which this court has original jurisdiction, however, the court declines to exercise supplemental jurisdiction over the state law claims in Counts IV and V of the Complaint, pursuant to 28 U.S.C. § 1367(c)(3). *See Mergens v. Dreyfoos,* 166 F.3d 1114, 1119 (11th Cir. 1999) (noting that in the Eleventh Circuit courts are encouraged to dismiss state law claims if the federal claims are dismissed prior to trial). The state law claims will, therefore, be dismissed without prejudice, and the court need not address the defenses to those claims asserted in the Motion for Summary Judgment.

**V. <u>CONCLUSION</u>**

This case involves a young child whose mother disapproved of the manner in which he was provided educational services by his public school. In evaluating the facts of this case, the court has not decided, or even addressed, whether the teacher's actions were appropriate under state tort law. What the court has decided is that objectively, viewing the totality of the circumstances, the facts of this case, when viewed in a light most favorable to the non-movant, do not shock the conscience in a constitutional sense, and therefore do not establish a deprivation of the substantive due process rights of liberty or bodily integrity. This conclusion

15

is consistent with "the Supreme Court's mandate to remain vigilant in policing the boundaries separating tort law from constitutional law." *Nix v. Franklin County School Dist.*  311 F.3d 1373, 1379 (11th Cir. 2002).  The teacher's actions also did not rise to a level such that procedural due process rights were implicated.

The Plaintiff having failed to establish a violation of federal law, for the reasons discussed, the Motion for Summary Judgment is GRANTED as to the federal claims, and the court declines to exercise supplemental jurisdiction over the state law claims, dismissing them without prejudice.  A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 6th day of April, 2010.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

16